UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

GLENN FRANTZ,

                Plaintiff,                Case No. 1:11-cv-584

v.                                             Honorable Janet T. Neff

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the entire civil action filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Glenn Frantz presently is confined at the Kalkaska County Jail. He sues the Michigan Department of Corrections (MDOC); the Kalkaska County Correctional Facility[1]; and the following Kalkaska County officials: Sheriff David A. Israel; Undersheriff Abe C. Devol; Prosecutor Brian Donnelly; Judge Lynn M. Buday; Sergeant Rich Gillisie; and Officers Benjamin Hawkins, Ryan Arsnoe, Chris Cergnul, Jan Gualtiere, Todd Harger, Megan Hill, and Dug Jordan; and "John and Jane [D]oe defendants yet unnamed." (Compl., Page ID#1.)

According to the complaint, on January 27, 2011, Plaintiff filed an interlocutory appeal in the Michigan Court of Appeals, challenging the circuit court's decision affirming the district court's finding of probable cause. That same date, Plaintiff was tried and convicted of the misdemeanor of driving while his license was suspended. He was sentenced to one year in the Kalkaska County Jail. On February 2, 2011, Plaintiff's appeal was dismissed for lack of jurisdiction, because an interlocutory appeal could only be pursued by application for leave to appeal.

Plaintiff alleges that he subsequently was deprived of access to a law library necessary to his pursuit of an application for leave to appeal. Plaintiff's wife complained on February 3, 2011 about the denial of access. On February 4, Defendant Gillisie delivered to Plaintiff a letter signed by Defendant Sheriff Israel, in which Israel informed Plaintiff that he must put his requests for specific legal materials in writing and submit them to Israel's attention. According to Plaintiff, Israel's insistence on the practice violates the Kalkaska County Jail policy on inmate legal assistance, contained in General Order 77.3.1(4)(A). That same date, Plaintiff sent a letter to Israel, requesting a copy of the policy. He received the policy on February 18. In the attached letter,

---

[1]The correctional facility for Kalkaska County is known as the Kalkaska County Jail, not the Kalkaska County Correctional Facility. The Court will hereafter refer to the facility as the Kalkaska County Jail.

Defendant Israel reminded Plaintiff that he had to request specific legal materials, as he would not have free access to the library, which was used by both the prosecutor's office and private attorneys.

On March 10 and 11, 2011, Plaintiff sent Israel two letters, saying, "I need access to the law library for legal research." (Compl., Page ID#12.) Defendant Israel responded on March 11, asking Plaintiff about the general nature of what he wanted to research and the kind of materials he needed. Israel told Plaintiff that he did not need to provide MCL numbers, but Plaintiff needed to tell Israel what general laws he wanted to research. On March 17, 2011, Plaintiff asked for a good dictionary. Defendant Israel responded the same day, stating, "Look in library or have one dropped off." (*Id.*) Plaintiff wrote Israel on March 18, saying that he needed access to the law library for legal research to complete his appeal. Plaintiff also filed a Level One grievance that same date. The following day, he filed a Level Two grievance.[2]

On March 24, Defendant Prosecutor Donnelly wrote to Plaintiff, acknowledging that Plaintiff's desire to pursue an appeal was a legitimate reason for requesting legal materials. Donnelly noted, however, that the Michigan Court of Appeals had dismissed the appeal on February 2, 2011, and he asked if Plaintiff planned to appeal something else. Donnelly explained that the Kalkaska County Law Library was small, and might not have all the materials Plaintiff wanted. Donnelly expressed his intent to meet with Plaintiff and Defendant Israel, in order to determine what Plaintiff might need.

Plaintiff met with Defendants Donnelly and Israel on March 25. Defendant Donnelly wrote a letter confirming the meeting that same day. According to Donnelly's letter, Plaintiff

---

[2]Plaintiff alleges that, on March 21, 2011, he also made a written request for medical services to treat a bad tooth. Plaintiff makes no further allegations about medical treatment, and he does not bring a claim alleging the denial of medical treatment.

expressed a need to review his own personal documents, which were at his home. Plaintiff was told that he must make arrangements to have the documents brought to the jail so that he could review them. Donnelly also indicated that, once Plaintiff had reviewed the documents, Donnelly and Israel would meet with him again to see what legal materials he might need. Defendant Israel also responded to the Level Two grievance that same date. On March 30, 2011, Plaintiff wrote to Donnelly, disputing Donnelly's summary of the meeting. Plaintiff denied that he would be able to tell Donnelly which reference materials he required after he reviewed his personal documents. Plaintiff again simply requested access to the Kalkaska County law library, referencing the MDOC and alleged violations of MDOC policies.

On April 18, 2011, Plaintiff again grieved his lack of access to the law library. Defendant Undersheriff Devol responded to Plaintiff's grievance on April 21, indicating that Plaintiff had received at least two packages of documents from the outside since March 25, 2011. Plaintiff had not, however, submitted any request for particular library reference materials. Devol explained that the Kalkaska County Jail was not part of the MDOC and stated that he would set up another meeting with Plaintiff and the prosecutor in order to clarify what was involved in Plaintiff obtaining legal research materials.

In his first and second claims for relief, Plaintiff contends that he has been denied access to the courts in violation of the United States and Michigan Constitutions. In his third and fourth claim for reliefs, Plaintiff complains for the first time that he has not been given work release like other similarly situated prisoners, in violation of the Fourth and Fourteenth Amendments and the Michigan Constitution.

## **Discussion**

I. Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the MDOC.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      **A.**     **Lack of Allegations**

The body of Plaintiff's complaint contains no factual allegations about the conduct of Defendants Hawkins, Arsnoe, Cergnul, Demars, Gualtiere, Harger, Hill, Jordan, Buday or any unnamed Defendant. In addition, the only allegation against Defendant Gillisie is that, on February 4, 2011, Gillisie delivered to Plaintiff a letter from Defendant Israel. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Plaintiff fails even to mention Defendants Hawkins, Arsnoe, Cergnul, Demars, Gualtiere, Harger, Hill, Jordan, Buday or any unnamed defendants in the body of his complaint. His allegations therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Moreover, although Plaintiff mentions Defendant Gillisie once in his complaint, he alleges only that Gillisie delivered a letter. Such an allegation fails to support a plausible claim of unconstitutional conduct against Gillisie. *See Iqbal*, 129 S. Ct. at 1949. The Court therefore will

dismiss Defendants Hawkins, Arsnoe, Cergnul, Demars, Gualtiere, Harger, Hill, Jordan, Buday, Gillisie and any unnamed Defendants.

### B.     Access to the Courts

Plaintiff alleges that Defendants Israel, Devol and Donnelly violated his rights under the Due Process Clause and the First Amendment by denying him access to the courts. Plaintiff appears to claim that he was constitutionally entitled to unfettered access to a legal library in order to prepare his claims. He also suggests that the failure to give him unfettered access is unconstitutional because it violates Kalkaska County Jail General Order No. 77.3.1(4)(A), various MDOC policies, state statutes, and the state constitution.

To the extent that Plaintiff bases his claim on state law, he fails to state a claim of constitutional dimension. Section 1983 does not provide redress for a violation of a state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). As a consequence, Plaintiff fails to state a constitutional claim based on alleged violations of policies or other state law.

However, it is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S.

343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (*citing Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (*citing Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

The right of access to the courts has never been equated with unfettered access to legal materials in a prison library. *See Lewis*, 518 U.S. at 351 (a sub-par library or legal assistance program does not establish relevant actual injury). To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the

confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

According to Plaintiff's own allegations and attachments to the complaint, Defendants promptly replied to his every request for access to legal materials. Defendants repeatedly offered to respond to any specific request from Plaintiff for materials that pertained to his appeal. Defendants told Plaintiff that he did not have to identify specific statutes or titles that he wanted, he only had to advise the Sheriff of the subject of the legal materials in which he was interested. Moreover, when Plaintiff continued to request only unqualified access to the library, Defendants met with Plaintiff on more than one occasion to explain how the system for accessing materials worked. Yet Plaintiff, by his own admissions, never made a request for any specific kind of legal material. He simply repeated his claim of right to unfettered access.

Indeed, even in his complaint, Plaintiff fails to specify what legal materials he needed to pursue an appeal of his conviction or how Defendants conduct in any way caused him an actual injury to his pursuit of his appellate rights. The Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*,

536 U.S. at 416. Plaintiff has wholly failed to identify any lost remedy or injury caused by Defendants.

For all these reasons, Plaintiff fails to allege any facts suggesting that Defendants deprived him of necessary legal materials or impeded his pursuit of an appeal of his conviction. As a consequence he fails to state an access-to-the-courts claim against Defendants Israel, Devol and Donnelly.

Plaintiff also sues the Kalkaska County Jail. The jail is a building, not an entity capable of being sued in its own right. However, construing Plaintiff's pro se complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Kalkaska County. Kalkaska County may only be liable under § 1983 when its policy or custom causes the injury. *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). Because Plaintiff is unable to demonstrate a constitutional injury, he cannot demonstrate that any county policy caused such an injury. The Court therefore will dismiss the Kalkaska County Jail and Kalkaska County.

### C. Work Release

In Counts Three and Four of his complaint, Plaintiff broadly claims that he has been denied work release by an unnamed Defendant when other similarly situated prisoners have been granted work release. Plaintiff asserts in Count Three that the discrepancy in treatment is based on Plaintiff's unspecified political beliefs, ostensibly in violation of the Due Process Clauses of the Fourth and Fourteenth Amendments. In Count Four, Plaintiff alleges that the denial violates the Michigan Constitution.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. Under *Sandin*, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff does not have a federally cognizable liberty interest in work release. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison employment, vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification

and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs). In two unpublished decisions applying *Sandin*, the Sixth Circuit has recognized that the denial of work release fails to implicate a liberty interest because it is not an atypical and significant hardship. *See Thompson v. Thompson*, No. 96-6352, 1998 WL 211775 (6th Cir. Apr. 23, 1998); *Little v. Campbell*, No. 95-5515, 1997 WL 242050, at *1 (6th Cir. May 8, 1997). Other circuit courts have likewise rejected the contention that an inmate possesses a protected liberty interest in work release. *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (holding that an inmate, who was denied permission to participate in work release, has no constitutionally protected liberty interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary experience of inmates"); *Asquith v. Dep't of Corr.*, 186 F.3d 407 (3d Cir. 1999) (holding that "Asquith's [termination from work release] and return to prison did not impose [an] atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest"); *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996) (holding that an inmate who was summarily removed from a work release program and sent to a medium security prison after having successfully participated in work release for four years did not possess a protected liberty interest in remaining in work release because confinement within the prison walls of the medium security prison was an ordinary incident of prison life); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996) (holding that the revocation of work release status imposed neither an atypical nor a significant deprivation, reasoning that the inmate was returned to the same facility from which he had left upon being granted work release several months

before). Because he has no liberty interest in work release, Plaintiff fails to state a due process violation.

By alleging that he was treated differently than other similarly situated persons, Plaintiff arguably intends to allege a violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Plaintiff, however, fails to state an equal protection claim. Plaintiff's allegations about discriminatory treatment are wholly conclusory. He merely states that he is being treated differently because of his political beliefs. Plaintiff provides no specific factual allegations to support his contention and identifies no Defendant responsible for the alleged discrimination. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 129 S. Ct. at 1949-50 (2009); *Twombly*, 550 U.S. at 555; *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). Plaintiff therefore fails to state an equal protection claim under the Fourteenth Amendment.

**D.    State-Law Claims**

In Counts Two and Four of the complaint, Plaintiff raises claims under the Michigan Constitution and other state law. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his claims under state policies, statutes or constitution, the Court declines to exercise jurisdiction. The Sixth Circuit routinely has held that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits. *Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)). Plaintiff's state-law claims therefore will be dismissed without prejudice.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  July 25, 2011                         /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge